IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL CLARK )<br>    *Plaintiff,* )<br>)<br>v. )<br>)<br>THE PENNSYLVANIA DEPARTMENT )<br>OF CORRECTIONS )<br>)<br>    *Defendant.* ) | Civil Action No.  3:23-cv-69<br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT

Plaintiff Carl Clark, by his attorneys, the Mizner Law Firm, brings this action pursuant to the Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act of 1973 against the Pennsylvania Department of Corrections for discriminating against him on the basis of his disability and states:

### PARTIES

1. Plaintiff Carl Clark is an adult currently who at all relevant times was incarcerated by the Pennsylvania Department of Corrections.

2. Defendant Pennsylvania Department of Corrections ("DOC") is an agency of the Commonwealth of Pennsylvania whose principal office is located at 1929 Technology Parkway, Mechanicsburg PA, 17050.

3. Defendant DOC is a recipient of federal funding.

### JURISDICTION AND VENUE

4. Plaintiff Carl Clark brings this action pursuant to 28 U.S.C. 2201, 2202, the Americans with Disabilities Act, 42 U.S.C. 12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. 794(a).

1

5. This Court has jurisdiction over these claims pursuant to 28 U.S.C. 1331 and 1343.

6. Venue is appropriate in this District pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Pennsylvania.

**FACTS**

7. Mr. Clark was diagnosed with Leber's optic neuropathy in approximately 1985, when he was just twenty years old.

8. Leber's optic neuropathy (LON) is a rare mitochondrial disorder that typically presents in young males with progressive visual loss due to optic neuropathy.

9. As a result of his struggle with LON, Mr. Clark has been legally blind for over thirty years, and is reduced to seeing large objects, changes in light and dark, and movement which is close to his eyes. This condition inhibits every activity of daily life which involves eyesight.

10. Mr. Clark is not able to see well enough to read or write, except with the use of magnification devices which enlarge writing to many times their size.

11. Mr. Clark was incarcerated in the custody of the DOC from July 2021, through January 2023.

12. During that period, he was housed in four institutions: SCI Smithfield for an initial quarantine period, then SCI Camp Hill for processing, then SCI Rockview until April 2022, when he was transferred to SCI Houtzdale until he was paroled.

13. Each time Mr. Clark was processed into one of the DOC's prison facilities, he would advise the medical staff that he was legally blind, and request accommodations.

14. Mr. Clark was never provided, and never received, any accommodations for his disability at any of the four DOC facilities where he was housed.

15. Instead, he would simply be released into the general population, with a copy of the inmate handbook which he could not read, in a facility where he did not know where anything was, and could not read signage or directions, to fend for himself.

16. Mr. Clark requested disability accommodations, specifically for both vision aides, to allow him to read, and vision training, to allow him to navigate safely and effectively through the prison facility.

17. Mr. Clark was repeatedly advised that the prison staff were working to process his requests for assistance, but was never provided any actual assistance or accommodation.

18. Thirteen months after his incarceration with the DOC began, Mr. Clark was provided an Inmate Disability Accommodations Response from Tiffany Fackler, the ADA Coordinator with the DOC. She wrote, in part:

> As an accommodation, you are requesting to be supplied with all low vision aides prescribed to me by the eye doctors. Also, supplied with low vision training for independent living skills. This will enable you to read and write for yourself, and to participate in required and desired programs and activities, and to be able to function on your own.
>
> Your accommodation request and the relevant medical and/or psychological forms were reviewed. It has been determined that you do have a qualifying disability under the ADA. Therefore, your request for the assistive devices is approved, however, it will not be the exact options requested due to safety and security concerns. I will confer with the site CHCA to appropriate options and order decisions that will assist with your needs but maintain safety and security. Low vision training is not currently available.

19. Despite this acknowledgement by the DOC that Mr. Clark has a qualifying disability and required accommodations, the DOC never provided him <u>anything</u> - neither the vision aids prescribed by his medical providers, nor any other accommodation.

20. The closest Mr. Clark ever came to receiving a vision aid was when the medical department ordered him a magnifier, but for reasons which were never explained to Mr. Clark, it was not permitted into the institution.

21. As a result, Mr. Clark spent his entire period of confinement without any assistance or accommodation from the DOC. He was forced to beg other prisoners to help him read signs, call-out sheets, and explain to him where he needed to go within the prison.

22. He also had to beg other prisoners to assist him any time he needed to write a request to staff, read communication or notices from the prison staff, read the inmate handbook to learn the rules and regulations of the facility, and to read his own mail to him.

23. Until Mr. Clark was able to memorize the layout of the facility where he was housed, he was totally dependent on the kindness of fellow inmates to point him in the right direction.

24. Each time that Mr. Clark was transferred to a new facility, he was completely helpless until he could memorize the layout of the new institution, and where his cell was located within that institution.

25. Although Mr. Clark greatly feared for his physical safety, he was not offered any accommodation in that regard. Mr. Clark knew that if he complained that he was not safe, his only option would be to accept placement into the RHU, where he would be confined to his cell twenty-three hours a day.

26. At no point in time did anyone on behalf of the DOC ever deny that Mr. Clark could not see, or provide any legitimate justification for their failure to provide him accommodation of his disability.

27. To the contrary, the DOC, through its employees, including ADA Coordinator Tiffany Fackler, were fully aware of Mr. Clark's disability, and yet failed to accommodate him.

28. Mr. Clark's minimum sentence date was in February 2022, and as such, was eligible to be paroled in February 2022.

29. However, the parole requirements included the completion of certain written programming, which Mr. Clark could not complete because he could not see to read or write.

30. Mr. Clark was denied the vision assistance and reasonable accommodations necessary to complete his required programming.

31. As a result, Mr. Clark remained incarcerated until January 2023, due to the fact that he could not see well enough to complete his required written programming.

32. Thus, the Defendants' deliberate indifference to his serious medical need and disability, caused him to remain incarcerated for eleven months longer than otherwise necessary.

## COUNT I

### Exclusion from services of a Federally funded entity in violation of the Rehabilitation Act

33. The foregoing averments of this Complaint are incorporated herein as though set forth in full.

34. Defendant DOC receives federal funding from the United States Department of Housing and Urban Development.

35. Upon information and belief, each institution in which Mr. Clark was incarcerated, was and is funded in part by this federal funding.

36. At all relevant times, Mr. Clark was legally blind, which caused him to meet the definition of an "individual with a disability" under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*.

37. Defendant DOC unlawfully and in direct violation of the Rehabilitation Act failed and refused to grant reasonable accommodations to Mr. Clark.

38. Defendant DOC's unlawful actions had the effect of limiting Mr. Clark because of his physical disabilities.

39. By refusing Mr. Clark's requests for reasonable accommodations, Defendant DOC failed to provide Mr. Clark housing and access to services which were as effective as those given to others. By refusing Mr. Clark access to the vision assistance that was recommended for him by his doctors, Defendant DOC left Mr. Clark vulnerable and unable to navigate the prison system without hoping for the kindness of others to assist him.

40. Defendant DOC could have accommodated Mr. Clark by providing him vision assistance, and low vision training.

41. Such accommodations would not have caused DOC to experience undue financial or administrative burdens, thus the accommodations sought were reasonable.

42. Defendant DOC's policies and procedures had the effect of excluding and/or limiting Mr. Clark because of his physical disabilities.

43. The denial of reasonable accommodations for his disability caused Mr. Clark anxiety, frustration, and mental anguish.

WHEREFORE, Plaintiff Carl Clark respectfully requests that this Honorable Court enter judgment in his favor and against Defendant DOC for an amount in excess of $75,000.00 as well as for such other and further relief as permitted by law.

## COUNT II

## Discrimination and Exclusion from services of a public entity in violation of the ADA

44. The foregoing averments of this Complaint are incorporated herein as though set forth in full.

45. Defendant DOC is a "public entity" as defined by Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("Title II").

46. For the entire period of his incarceration, Mr. Clark met the definition of a "qualified individual with a disability" under Title II.

47. By unlawfully refusing to reasonably modify Mr. Clark living conditions, Defendant DOC denied Mr. Clark's the basic necessities of life, by reason of his disability.

48. By unlawfully refusing to reasonably modify Mr. Clark's living conditions, Defendant DOC discriminated against Mr. Clark as a disabled individual.

49. As a foreseeable result of Defendant DOC's discrimination against Mr. Clark, he was left blind in the unforgiving prison environment for the entirety of his confinement.

50. As a foreseeable result of Defendant DOC's discrimination against Mr. Clark suffered anxiety, frustration, humiliation and mental anguish.

WHEREFORE, Plaintiff Carl Clark respectfully requests that this Honorable Court enter judgment in his favor and against Defendant DOC for an amount in excess of $75,000.00 as well as for such other and further relief as permitted by law.

Respectfully submitted,

MIZNER LAW FIRM

By: /s/ John F. Mizner

John F. Mizner
PA Bar No. 53323
jfm@miznerfirm.com

Joseph P. Caulfield
PA Bar. No. 322823
jpc@miznerfirm.com

311 West Sixth Street
Erie, Pennsylvania 16507
814.454.3889

*Attorneys for the Plaintiff*
